951 So.2d 244 (2006)
Nhut Van MAI
v.
George R. FLOYD.
No. 2005 CA 2301.
Court of Appeal of Louisiana, First Circuit.
December 6, 2006.
Rehearing Denied February 14, 2007.
Michael J. Coleman, Baton Rouge, for Plaintiff/Appellant, Nhut Van Mai.
Raymond L. Simmons, Baton Rouge, for Defendant/Appellee, George R. Floyd.
(Court composed of Judge JAMES F. MCKAY, III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., serving as judges ad hoc by special appointment of the Louisiana Supreme Court).
TERRI F. LOVE, Judge, Ad Hoc.
This appeal arises from a petition for declaratory judgment regarding a lot of immovable property sold by tax deed. *245 Nhut Van Mai asserted that he owned the property via possession and acquisitive prescription. George Floyd asserted ownership based on a tax sale deed. The trial court found that Nhut Van Mai was in possession of the property, but that George Floyd owned the lot and dismissed the declaratory judgment. We find the trial court erred in declaring George Floyd the owner, reverse the judgment, and render.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On May 23, 2002, Nhut Van Mai ("Mr. Mai") filed a petition for declaratory judgment alleging ownership of "Addition to Roppolovilla, . . . Lot Ten (10), Square Nine (9)" ("lot 10"), based upon possession and good faith, through successors of title, for ten years.
On June 19, 1984, Joseph and Lynn Campagna ("the Campagnas") sold "LOTS NINE (9) AND TEN (10), SQUARE NINE (9)" to Richard and Beulah Albert ("the Alberts"). The Alberts then sold lots nine and ten to Ali and Inggub Tabrizi ("the Tabrizis"), and Susan Zare ("Ms. Zare") on May 4, 1990. Ms. Zare sold her interest in the lots to the Tabrizis on July 17, 1991. Mr. Mai purchased the lots from Mr. Tabrizi, after he divorced Mrs. Tabrizi, on January 9, 1996. Mr. Mai operated the Premier Grocery Store ("Premier Grocery") on lots nine and ten. All of the above conveyances concluded without a title examination.
Raymond Floyd purchased lot ten of Mr. Mai's alleged property by tax sale in 1986. Raymond Floyd filed a petition for monition on April 26, 1996. The tax sale of lot ten was "confirmed and homologated" and "made perfect and complete" on June 20, 1996. In 1999, Raymond Floyd sold lot ten to his son George Floyd ("Mr. Floyd"). Mr. Floyd has paid and continues to pay the property taxes on lot ten.
In December 2001, Mr. Mai attempted to convey lots nine and ten to Ha Hoang ("Ms. Hoang"). While negotiating the purchase, Ms. Hoang's attorney performed a title examination, during which she and Mr. Mai discovered a previous tax deed conveying lot ten to Raymond Floyd. Ms. Hoang began operating the Premier Grocery in January 2002, and remains the "current operator." She redeemed lot nine from the State by paying over $15,000 around January 2005.
The trial court orally determined that Mr. Mai was in possession of lot ten, but held that Mr. Floyd was the owner and dismissed the petition for declaratory judgment. Mr. Mai's appeal followed.
Mr. Mai asserts the trial court erred by declaring Mr. Floyd the owner of lot ten as he and his predecessors in title "have enjoyed continuous, peaceful, uninterrupted possession of the property" for over ten years by maintaining and operating Premier Grocery.

STANDARD OF REVIEW
Appellate courts review a trial court's decision to grant or deny a declaratory judgment using the abuse of discretion standard. Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4th Cir.1989). Factual findings made by the trial court are reviewed with the manifest error or clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

DECLARATORY JUDGMENT
Courts "may declare rights, status, and other legal relations whether or not further relief is or could be claimed." La. C.C.P. art. 1871. "[T]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." La. C.C.P. art. *246 1871. The result "shall have the force and effect of a final judgment or decree." La. C.C.P. art. 1871. Interested parties may use a declaratory judgment to determine their rights when it regards a "deed, will, written contract or other writing constituting a contract." La. C.C.P. art. 1872.
When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment . . . the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.
La. C.C.P. art. 3654. Therefore, we must decide which party should prevail on a possessory action and if acquisitive prescription determines who owns lot ten.

POSSESSORY ACTION
A possessory action is brought by the alleged possessor "when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. C.C.P. art. 3655. The possessor must prove that: 1) he had possession during the disturbance; 2) he and his predecessors in title had possession without interruption and quietly "for more than a year immediately prior to the disturbance, unless evicted by force or fraud"; 3) the disturbance could be one in fact or in law; 4) the "possessory action was instituted within a year of the disturbance." La. C.C.P. art. 3658. A disturbance is "an execution, recordation, registry, or continuing existence of record of any instrument." La. C.C.P. art. 3659. The trial court found that Mr. Mai was in possession of lot ten and the issue in not appealed in this case.

ACQUISITIVE PRESCRIPTION
Possession and ownership are distinct claims to a thing. La. C.C. art. 481. A party may acquire ownership of an immovable through prescription after ten years. La. C.C. art. 3473. Corporeal possession must be alleged by the adverse possessor. La. C.C. art. 3476. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Acquiring ownership through the ten-year acquisitive prescription period requires that the person in possession be in good faith, have just title, and a "thing susceptible of acquisitive prescription." La. C.C. art. 3475. Good faith means that the person "reasonably believes, in light of objective considerations, that he is owner of the thing he possesses." La. C.C. art. 3480. The Louisiana Civil Code presumes good faith that can be "rebutted on proof that the possessor knows, or should know, that he is not the owner of the thing he possesses." La. C.C. art. 3481. "[E]rror of fact nor error of law defeats this presumption." La. C.C. art. 3481. "It is sufficient that possession has commenced in good faith; subsequent bad faith does not prevent the accrual of prescription of ten years." La. C.C. art. 3482.
In the case sub judice, corporeal possession that is "continuous, uninterrupted, peaceable, public, and unequivocal" for ten years is mandated for prescription. La. C.C. art. 3476. Once proved, ownership boundaries are fixed according to "limits established by prescription rather than titles." La. C.C. art. 794.
*247 Mr. Mai asserts that he has had "continuous, uninterrupted, peaceable, public, and unequivocal" possession for at least ten years. The tax sale occurred in 1986 during the Alberts' ownership: they sold the lots to the Tabrizis and Ms. Zare on May 4, 1990. If they were in good faith at the time of the conveyance, then Mr. Mai could tack on their ownership to his and become the owner of lot ten through the ten-year acquisitive prescription period. La. C.C. art. 3442.
The burden of proving bad faith remains with the party attempting to rebut the presumption of good faith. Phillips v. Parker, 483 So.2d 972, 979 (La.1986). Mr. Floyd avers that Mr. Mai was in bad faith because he stated that he was "happy" that he did not receive a tax bill for the property and that he knew he paid property taxes on his home and in Vietnam. However, this testimony does not address the central issue of Mr. Mai's good or bad faith at the time of conveyance. Mr. Mai testified that he and Mr. Tabrizi went to the tax assessor's office to check into whether delinquent taxes were owed on lots nine and ten. He was told that no taxes were due prior to his purchase. Additionally, the fact that no parties, prior to Ms. Hoang, conducted a title examination, which would have revealed the 1986 tax sale, does not create bad faith. Ponder v. Jenkins, 468 So.2d 1275, 1278 (La.App. 1st Cir.1985). The record is devoid of evidence as to bad faith on the part of the Tabrizis or Ms. Zare.
However, the record does document that the Premier Grocery has been operated without interruption for at least ten years. Mr. Floyd and Mrs. Floyd testified that Raymond Floyd attempted to sell lot ten to Mr. Mai. They also stated that Raymond Floyd and his attorney entered Premier Grocery on one occasion to inform the operators of lot ten's "true" owner. Mr. Mai was not at the store that day, but both Mr. Floyd and his mother testified that a woman became angry and ordered them out of Premier Grocery. However, Mr. Floyd and Mrs. Floyd testified that, to their knowledge, no further legal action or attempts to take corporeal possession of lot ten were taken. Accordingly, we find that Mr. Floyd failed to meet his burden of proving bad faith. In fact, the record demonstrates a lack of action by Raymond Floyd and Mr. Floyd. Thus, the trial court erred by declaring Mr. Floyd the owner of lot ten as Mr. Mai acquired ownership by acquisitive prescription.

DECREE
Accordingly, we reverse the decision of the trial court and render.
REVERSED AND RENDERED.