McClendon, j.
| ¡The defendant appeals the trial court’s judgments that granted the plaintiffs’ motion for summary judgment, declaring the plaintiffs to be the rightful possessors and owners of their respective immovable properties, including the 100-foot-wide strip of property at issue herein. For the reasons that follow, we affirm the judgments of the trial court.
FACTUAL AND PROCEDURAL HISTORY
On April 8, 2011, Emile J. Gros, John Farrell Chustz, Kernie J. Gros, Sharon Adams Jarreau, Arthur J. Delapasse, Brenda Delapasse Leteff, Carl J. Anderson, Gertrude Maze Anderson, Oliver 3. Jack, Sr., Hilda Sanchez Delapasse, Emile David, Jr., and Marilyn Adams David filed a petition for declaratory judgment and other relief against Boisvert Farms, LLC. In their petition, plaintiffs asserted that, on September 2, 2010, Bois-vert Farms disturbed the peaceable pos *993 session of their adjacent properties by filing a quitclaim deed in the public records of West Baton Rouge Parish that purported to evidence Boisvert Farms’ ownership of a 100-foot-wide strip of property across the properties of plaintiffs.[1] The quitclaim deed, dated August 31, 2010, between Union Pacific Railroad Company and Boisvert Farms, included the property at issue.[2] Plaintiffs asserted that they had openly enjoyed peaceful, quiet, and uninterrupted possession of their properties for more than one year prior to the act of disturbance and that they were entitled to a declaratory judgment maintaining their possession, enjoyment, and ownership of the property, including the 100-foot-wide strip of property at issue.
13Boisvert Farms filed an answer, denying the allegations of the petition and asserting that plaintiffs were not possessors of the property. Thereafter, on January 4, 2012, plaintiffs filed their motion for summary judgment, requesting the trial court to grant their request for a declaration of possession and ownership of their respective properties, including the 100-foot-wide strip of property. The hearing on the motion was set for May 30, 2012, and on May 23, 2012, Boisvert Farms filed its opposition to the summary judgment motion.
In the meantime, Oliver J. Jack, Sr., Arthur J. Delapasse, Brenda Delapasse Leteff, Hilda Sanchez Delapasse, Carl J. Anderson, Gertrude Maze Anderson, and Kernie J. Gros (only as to Lot B — 1) entered into settlement agreements with Boisvert Farms, and on May 30, 2012, after filing a motion to dismiss, they were dismissed from the suit with prejudice.[3] Additionally, the hearing was continued as to Emile David, Jr. and Marilyn Adams David, due to Mr. David’s health issues.[4] Further, on May 29, 2012, the remaining plaintiffs, Emile J. Gros, John F. Chustz, Sharon Adams Jarreau, and Kernie J. Gros, filed their reply memorandum for summary judgment, which included arguments regarding acquisitive prescription.
At the conclusion of the hearing on May 30, 2012, the trial court granted the motion for summary judgment. On August 1, 2012, a judgment was signed by the trial court, granting the motion for summary judgment as to Emile J. Gros, John F. Chustz, Sharon Adams Jarreau, and Ker-nie J. Gros. Also on August 1, 2012, the trial court signed a judgment, granting summary judgment as to Marilyn David. In the judgments, Emile J. Gros, John F. Chustz, Sharon Adams Jarreau, Kernie J. Gros (only insofar as to Lot 4), and Marilyn David were declared to be the rightful possessors and owners of their respective *994 properties, including the 100-foot-wide strip of property at issue.
|4Boisvert Farms appealed the judgments.[5] In its appeal, Boisvert Farms assigns the following as error:
1. The trial court erred in granting summary judgment based on good faith acquisitive prescription when it was not pled or raised in the motion for summary judgment.
2. The trial court erred in granting summary judgment when the undisputed evidence before it established ownership, prior possession, and continued possession in Boisvert Farms.
SUMMARY JUDGMENT AND THE STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 04-2012 (La. App. 1 Cir. 2/10/06), 935 So.2d 698, 701. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Summary judgment is favored and “is designed to secure the just, speedy, and inexpensive determination of every action.” LSA-C.C.P. art. 966(A)(2).
The burden of proof on a motion for summary judgment remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements ^determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Lewis v. Morgan, 93 So.3d 741, 744 (La.App. 1 Cir. 2012).
The mover bears the burden of proving that he is entitled to summary judgment LSA-C.C.P. art. 966C(2). When the mover will bear the burden of proof at trial, that party must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. Hines v. Garrett, 876 So.2d 764, 766 (La.2004). Such an affirmative showing *995 will then shift the burden of production to the party opposing the motion, requiring the opposing party either to produce evi-dentiary materials that demonstrate the existence of a genuine issue for trial or to submit an affidavit requesting additional time for discovery. Id. at 766-67. If the mover has put forth supporting proof through affidavits or otherwise,' the adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967B; Mitchell v. Southern Scrap Recycling, L.L.C., 11-2201 (La.App. 1 Cir. 6/8/12), 93 So.3d 754, 757, writ denied, 12-1502 (La.10/12/12), 99 So.3d 47.
In summary, when the mover will bear the burden of proof at trial, the initial burden of proof on a motion for summary judgment remains with the mover to show that no genuine issue of material fact exists. Lewis v. Four Comers Volunteer Fire Dept., 08-0354 (La.App. 1 Cir. 9/26/08), 994 So.2d 696, 699. Once the mover makes a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. Id.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines, 876 So.2d at 765. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in |filight of the substantive law applicable to the case, Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627, 632.
DISCUSSION
Chapter I of Title II of the Code of Civil Procedure, is entitled “Actions to Determine Ownership or Possession”, and provides for three different actions through which one can assert ownership or possession of real property. Louisiana Code of Civil Procedure Article 3651 provides for petitory actions, which are actions brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiffs ownership. Secondly, LSA-C.C.P. art. 3654 provides that “the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment_”[6] A plaintiff who is in possession of the property at issue can bring an action for declaratory judgment, thereby raising issues of possession and ownership in the same action. Lafourche Realty Co. v. Duard Eymard Co., Inc., 93-1278 (La.App. 1 Cir. 6/24/94), *996 688 So.2d 1138, 1139. Finally, LSA-C.C.P. art. 3655 provides for possessory actions.
In this matter, Boisvert Farms initially contends that summary judgment cannot be granted on an issue that was not presented in the motion for summary judgment. It asserts that acquisitive prescription was not pled in either the petition or the motion for summary judgment, and it was not until plaintiffs |7filed their reply memorandum that the issue of acquisitive prescription was raised. However, in their petition, plaintiffs requested that they be declared the rightful possessors and owners of the 100-foot-wide strip at issue. Further, in their motion for summary judgment, plaintiffs again sought a declaration of possession and ownership of the disputed property. Plaintiffs clearly put at issue the ownership of the 100-foot-wide strip by filing the declaratory judgment action pursuant to LSA-C.C.P. art. 3654, and we find Boisvert Farms’ argument to be without merit.[7]
Boisvert Farms also argues that the trial court erred in its application of the law of possession. It asserts that the trial court erred in not beginning its analysis in 1910, when Boisvert Farms’ predecessor, the New Orleans, Texas & Mexico Railroad acquired the property at issue.[8] Boisvert Farms claims that the railroad maintained possession of the property until it was transferred to Boisvert Farms. Thus, Boisvert Farms contends that the railroad was in possession of the disputed strip prior to the plaintiffs and that the railroad was never evicted and never lost civil possession.
Conversely, plaintiffs maintain that each plaintiff individually evicted the railroad of its possession and they began possessing as owners in their own right and, in fact, became owners of the disputed property long before the railroad ever transferred any purported interest it may have had in the property to Boisvert Farms.
As previously noted, Article 3654 provides that a person who is in possession of immovable property may institute an action for declaratory judgment for the recognition of his ownership against a person who claims ownership of the same property. Mt. Everett African Methodist Episcopal Church v. Carter, 96-2591 (La. App. 1 Cir. 12/29/97), 705 So.2d 1179, 1181. J^Thus, under the provisions of LSA-C.C.P. art. 3654, the first issue that must be determined is the question of current possession. Possession determines who has the burden of proof. When one party claims possession of one year to the exclusion of the other party and the court finds as a matter of fact that one party had possession for one year, the second party pleads his title. Then, the burden shifts to the one pleading title to make out his title good against the world. Id.[9]
Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself *997 or by another who keeps or exercises it in his name. LSA-C.C. art. 3421. Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess it. LSA-CC art. 3422. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. LSA-C.C. art. 3424. The possessor must prove that: 1) he had possession during the disturbance; 2) he and his predecessors in title had possession without interruption and quietly for more than a year immediately prior to the disturbance, unless evicted by force or fraud; 3) the disturbance could be one in fact or in law; and 4) the possessory action was instituted within a year of the disturbance. LSA-C.C.P. art. 3658[10]; Mai v. Floyd, 05-2301 (LaApp. 1 Cir. 12/6/06), 951 So.2d 244, 246, twit denied, 07-0581 (La.5/4/07), 956 So.2d 619.
| nPossession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation. LSA-C.C. art. 3433.[11] Louisiana Code of Civil Procedure article 3659 provides:
Disturbances of possession which give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law.
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.
Plaintiffs maintain that any alleged possession by the railroad was disturbed in fact and disturbed in law by plaintiffs, and the railroad never took any steps to quiet their disturbances. Plaintiffs allege that the execution and recordation of each of their titles, none of which contain any reservation or mention that the railroad company owned any portion of the 100-foot-wide disputed strip of property, evidences a disturbance in law.[12] Plaintiffs further allege disturbances in fact on their properties, including the growing of sugar cane; the grazing of cattle; constructing and maintaining roadways; building structures on the properties; mowing, grading, and maintaining the properties; leasing the *998 properties for farming and mineral purposes; using the properties for recreational purposes; and paying taxes on the properties. Plaintiffs contend that once they recorded title to their properties and began possessing the 110properties as owners, the railroad had one year to file a claim to reclaim possession, but the railroad failed to do so.[13]
One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. LSA-C.C. art. 3426. Plaintiffs assert that once they established possession, they constructively possessed their entire properties, which included the 100-fooh-wide strip at issue. Plaintiffs further contend that based on their just title, possession, and good faith, they each became owners of the 100-footr-wide strip long before the railroad purported to sell any interest it might have in the disputed property to Boisvert Farms, either through ten-year or thirty-year acquisitive prescription.
Boisvert Farms, however, argues that it has valid title to the 100-foot-wide strip. Therefore, according to Boisvert Farms, it was entitled to establish possession by tacking onto the railroad’s possession. Boisvert Farms maintains that plaintiffs have presented no evidence of eviction and that they are not possessors of the disputed property.
In support of their motion for summary judgment, each plaintiff presented evidence regarding his or her possession and ownership.
As to John F. Chustz, Mr. Chustz submitted his affidavit, with attachments, in which he attested that he purchased Lot 7, consisting of 28.62 acres, on March 20, 1972. He further attested that since acquiring the property, he had engaged in various acts of possession, including the building of a fence around the property and farming cattle across the property, including the disputed strip. Mr. Chustz further stated in his affidavit that from 1975 through 1982, he built barns and livestock pens on the property, including over the disputed property. He stated he has entered into various oil, gas, and mineral leases covering the entirety of the property, and that he has paid taxes on the property since he purchased it in 1972.
InSharon Adams Jarreau also filed an affidavit, with attachments, in which she stated that on February 1, 1991, her parents donated Lot 6-B, containing 11.53 acres, to her. She further attested that the property has had sugar cane on it since her father purchased it in 1947, and that the 100-foot-wide strip has been specifically farmed since April 1958, when her “father and brothers cleared it of the abandoned railroad line.” Ms. Jarreau stated that there are active sugar cane leases on the property and that, in addition to farming, she uses the property with her family for recreational purposes. She also attested that she has been paying the taxes on the lots since she became owner of the properties in 1991.
Emile J. Gros submitted his affidavit, with attachments, and attested that he and his wife are the owners of Lot 5-F, Lot 5-C-l, Lot 5-E-l, Lot 5-D-2, and Lot 5-D. He stated that they acquired an undivided one-quarter interest in Lot 5, containing 67.38 acres, on June 7, 1980. On January 26, 1994, by an act of partition, Mr. and Mrs. Gros acquired 16.24 acres, designated as Lot 5-F. On October 5, 1999, they acquired Lot 5-C-l, containing 5.08 acres, *999 in an exchange of property. Mr. and Mrs. Gros also acquired Lot 5-E-l, containing 6.73 acres, on July 27, 2000; Lot 5-D-2, containing 5.23 acres, on May 16, 2001; and Lot 5-D on September 11, 2002. Mr. Gros further attested that since acquiring the property, he has engaged in various acts of possession and ownership, including the planting, growing, and harvesting of sugar cane on the property; grazing of cattle across the property; constructing and maintaining roadways across the property; using the property with his family for recreational purposes, including the use of four-wheelers and horseback riding; entering into oil, gas, and mineral leases; mowing, grading, and maintaining the entirety of the property; and paying taxes on the property.
Kernie Joseph Gros filed his affidavit, with attachments. He attested that he acquired Lot 4 on July 29, 1994, and that since acquiring the property, he has engaged in various acts of possession and ownership, including the planting, growing, and harvesting of sugar cane on the property; constructing and | ^maintaining roadways across the property; using the property with his family for recreational purposes, including the use of recreational vehicles; entering into oil, gas, and mineral leases; mowing, grading, and maintaining the entirety of the property; and paying taxes on the property.
Marilyn Adams David also submitted her affidavit, with attachments, in which she stated that on February 1, 1991, her parents donated Lot 6-A, containing 16.80 acres, to her. She further attested that the property has had sugar cane on it since her father purchased it in 1947, and that the 100-foot-wide strip has been specifically farmed since April 1958, when her “father and brothers cleared it of the abandoned railroad line.” Ms. David stated that there are active sugar cane leases on the property and that, in addition to farming, she uses the property with her family for recreational purposes. She also attested that she has been paying the taxes on the property since she became owner in 1991.
Each of the plaintiffs further attested that when they purchased their properties, at no point was it ever brought to their attention, nor depicted in any survey, that a railroad company might have an interest in any of the properties. Additionally, plaintiffs stated that they considered themselves to be the sole and exclusive owners and possessors of their properties, that their possession has been constant and without interruption since at least the time plaintiffs acquired their property, and that there had been no adverse claims of ownership against any plaintiffs property until September 2, 2010, when the quitclaim deed of Boisvert Farms was filed.
In opposition to the motion for summary judgment, Boisvert Farms submitted the affidavit of George Pierson, an attorney and title examiner, as well as excerpts from the depositions of Mr. Chustz, Kernie Gros, Ms. Jarreau, and Emile and Earline Gros. Boisvert Farms argues that Mr. Pierson, after examining the abstract of title and other documents, concluded that Boisvert Farms had title to the lOO-foot-wide strip.
11sIn his affidavit, Mr. Pierson stated that he has been an attorney and title examiner in Louisiana since 1976. His title examination and opinion of title was based on an abstract of title certified from August 2,1910 until April 25, 2012, various maps, and a review of the history of the Union Pacific Railroad Company. Mr. Pierson concluded that from August 2, 1910, when the New Orleans Texas & Mexico Railroad Company acquired the 100-foot-wide strip that traversed through Lots 1 through 12 of Tonawanda Planta *1000 tion, through the merger of the railroads into the Union Pacific Railroad Company on October 20, 1997, and continuing up to the time of the quitclaim deed, the disputed strip of property was and continued at all times to be owned in full ownership by the railroad.[14] Mr. Pierson therefore concluded that Boisvert Farms was the full owner in fee simple title of the 100-foot-wide strip of property conveyed in the quitclaim deed.
The trial court concluded that plaintiffs possessed the property with intent to own and, in fact, did so from the time the railroad left in the 1950s until Boisvert Farms filed its quitclaim deed. The court also found that each of the plaintiffs acquired the ownership of the 100-foot-wide strip by either ten-year or thirty-year acquisitive prescription. Finding no genuine issue of material fact, the trial court granted summary judgment, declaring the plaintiffs to be the owners of the 100-fooh-wide disputed strip of property.
Upon our own thorough de novo review of the record, we agree with the trial court that plaintiffs were in possession of the disputed strip. Therefore, Boisvert Farms had the burden of proving that its title was good against the world. See ML Everett African Methodist Episcopal Church, 705 So.2d at 1182. Boisvert Farms, however, did not, and could not, meet this burden of proof. At the time Boisvert Farms filed its quitclaim deed, its predecessor, the Union Pacific Railroad Company was not the owner of the 100-foot-wide strip of property. The railroad’s possession was interrupted by the possession of the disputed property by plaintiffs. Plaintiffs established corporeal and constructive 114possession of the disputed strip by their titles and acts of possession and the railroad’s lack of intent to own. Therefore, the burden shifted to Boisvert Farms to show the existence of a genuine issue for trial. Boisvert Farms failed to present evidence sufficient to prove that it “acquired ownership from a previous owner” in 2010, as the railroad was no longer the possessor or owner of the property. Accordingly, because we find no genuine issue of material fact, the trial court correctly determined that the plaintiffs are the possessors and owners of the 100-foot-wide strip of property, and their motion for summary judgment was properly granted.
CONCLUSION
For the above and foregoing reasons, we affirm the August 1, 2012 judgments of the trial court, granting summary judgment and declaring Emile J. Gros, John F. Chustz, Sharon Jarreau, Kernie Gros (only insofar as to Lot 4), and Marilyn David to be the rightful possessors and owners of their respective properties, including the 100-foot-wide strip of property at issue. Costs of this appeal are assessed against Boisvert Farms, LLC.
AFFIRMED.

. The immovable property at issue, located in West Baton Rouge Parish, contains approximately 9.13 acres, with dimensions of approximately 100 feet wide by 3,979 feet long, and it intersects the properties of each of the plaintiffs.

. Louisiana Civil Code Article 2502 provides, in pertinent part that "[a] person may transfer to another whatever rights to a thing he may then have, without warranting the existence of any such rights.” Comment (b) of the Revision Comments provides that ‘‘[t]his Article describes the effects of an act of the kind called a quitclaim deed at common law.” “At common law, the distinguishing factor of a quitclaim deed is that it is an instrument that purports to convey nothing more than the interest or estate of the grantor, if any he has, at the time of the conveyance, rather than the property itself.” Comment (c).

. Kernie J. Gros expressly reserved all claims as to Boisvert Farms in connection with his remaining property, identified as Lot 4.

. Subsequently, Mr. David passed away, and on June 21, 2012, Boisvert Farms filed its opposition to the motion for summary judgment with regard to Marilyn David. The parties agreed to submit the matter on briefs.

. Because the judgments appeared to be partial summary judgments, this Court, on May 14, 2013, issued a show cause order regarding the finality of the judgments, instructed the parties to file briefs on the issue, and remanded the matter to the trial court to either advise this Court that the judgments did not warrant a designation under LSA-C.C.P. art. 191SB or sign amended judgments containing the designation and provide this Court with a per curiam containing reasons why there was no just reason for delay based on the factors expressed in R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05), 894 So.2d 1113, 1122-23. On June 10, 2013, the parties filed an unopposed motion to dismiss the remaining trespass claim and a motion to certify the judgments as final. On June 11, 2013, the trial court signed its order dismissing plaintiffs’ trespass claim with prejudice and, finding no just reason for delay, designated the August 1, 2012 judgments as final. Although a duty panel made a preliminary determination to maintain the appeal, the propriety of the trial court’s designation of finality was reserved to this panel in connection with our duty to review the merits of the appeal. Considering the criteria set forth by the Louisiana Supreme Court in R.J. Messing-er, Inc., we have reviewed the propriety of the trial court’s designation of finality and conclude that the trial court’s designation of its judgment as final was proper.

. Louisiana Code of Civil Procedure Article 3654 provides:
When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.

. Boisvert Farms’ reliance on Hoover v. Hoover, 01-2200 (La.4/3/02), 813 So.2d 329, is misplaced, as the ownership of the 100-foot-wide strip of property is clearly at issue herein. Further, unlike the lack of notice in Hoover, Boisvert Farms unquestionably knew that plaintiffs moved for summary judgment on the issue of possession and ownership.

. The New Orleans, Texas & Mexico Railroad Company was merged into the Missouri Pacific Railroad Company and then became part of the Union Pacific Railroad Company.

.Possession is a preliminary matter which must first be resolved before the issue of ownership can be determined because, otherwise, the possessor's rights are infringed by forcing him to prove ownership. Chevron U.S.A., Inc. v. Landry, 546 So.2d 858, 861 (La.App. 1 Cir. 1989), aff’d, 558 So.2d 242 (La. 1990).

.Louisiana Code of Civil Procedure Article 3658 provides:
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.

. What constitutes eviction is a question of fact to be determined by the trier of facts. See Comment (d) to Article 3433.

. John Chustz recorded title to Lot 7 on March 31, 1972. Sharon Jarreau recorded title to Lot 6-B on February 4, 1991. Emile Gros recorded title to an undivided interest in Lot 5 on June 11, 1980; Lot 5-F on January 27, 1994; Lot 5-C-l on October 13, 1999; Lot 5-E-l on August 2, 2000; and Lot 5-D-l on May 18, 2001. Kernie Gros recorded title to Lot 4 on July 29, 1994. Marilyn David recorded title to Lot 5-A on February 4, 1991.

. Louisiana Civil Code article 3434 provides, in relevant part, that "[i]n the case of eviction, the right to possess is lost if the possessor does not recover possession within a year of the eviction.”

. This is less and except 4.664 acres that were transferred by the Missouri Pacific Railroad Company that were located only on lots 1, 2, and 3 and the northern portion of Lot 4 of Tonawanda Plantation.