582 So.2d 186 (1991)
Melanie Miller EICHE, Louisiana Association of Educators
v.
LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION et al.
Consolidated with
Kathleen HOWARD, Nick Aubespin and Louisiana Federation of Teachers
v.
STATE of Louisiana et al.
No. 91-CA-0820.
Supreme Court of Louisiana.
June 13, 1991.
*187 Victor A. Sachse, III, Murphy J. Foster, III, Van R. Mayhall, Jr., James R. Chastain, Jr., Gayla Melder Moncla, Breazeale, Sachse & Wilson, John Kennedy, Pamela T. Taylor, James Ross, for defendants-appellants.
Charles L. Patin, Jr., David K. Nelson, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Charles Mayer Samuel, III, Rosen & Samuel, for plaintiffs-appellees.
Robert Lloyd Hammonds, for amicus curiae Louisiana School Bd. Ass'n.
MARCUS, Justice.
On August 27, 1990, Kathleen Howard, Nick Aubespin (certified teachers employed in the public schools) and the Louisiana Federation of Teachers filed suit against the State of Louisiana, through the governor, and the attorney general. On August 29, 1990, Melanie Miller Eiche (a certified and tenured teacher) and the Louisiana Association of Educators filed suit against the Board of Elementary and Secondary Education (BESE), the Department of Education (DOE) and the State of Louisiana, through the attorney general. Both suits requested declaratory and injunctive relief, seeking to have certain provisions of the Children First Act (CFA), La.R.S. 17:3871 et seq., declared unconstitutional and prohibiting their implementation. The two suits were consolidated. Prior to trial, a hearing was held on plaintiffs' motion for summary judgment, motion in limine and motion to strike. The motion in limine and motion to strike were granted, and, by stipulation of the parties, the motion for summary judgment was converted to a trial on the merits. The trial judge ruled that certain sections of the CFA[1] were in conflict with La. Const. art. VIII, § 3(A) as interpreted by this court in Johnson v. Board of Elementary and Secondary Education, 414 So.2d 352 (La.1982). A direct appeal was made to this court.[2] La. Const. art. V, *188 § 5(D)(1). At the request of BESE, DOE and the state, an expedited hearing was granted.[3] Louisiana Supreme Court Rule VI, § 4.
The sole issue presented for our consideration is whether the decertification provisions of the CFA violate La. Const. art. VIII, § 3.
The CFA was passed by the Louisiana Legislature in 1988 as Act 659. It provides for the implementation of a teacher evaluation and remediation program. BESE is directed to issue three types of regular teaching certificates: provisional (for persons seeking certification in this state for the first time), renewable professional, and provisional/in remediation. La.R.S. 17:3891. In order to determine whether the teacher meets the requirements for a certificate, each teacher is evaluated every five years by a team of three evaluators. DOE is directed to develop a "standard evaluation instrument" based upon "objective criteria." La.R.S. 17:3884(A)(1). The evaluation may result in a rating of superior, satisfactory or unsatisfactory. La.R.S. 17:3883(A). If the teacher receives a superior or satisfactory evaluation, BESE issues a renewable professional certificate which is valid for five years. La.R.S. 17:3891(B)(1). A teacher receiving a nonsatisfactory evaluation is directed to undertake a program of remediation of identified deficiencies and reevaluation. BESE certifies the teacher as "provisional/in remediation." This certificate is valid for one school year. La.R.S. 17:3883(C)(1). If the teacher receives a satisfactory evaluation at the end of this year, the remediation and reevaluation program terminates, and the teacher is not evaluated again for five years. La.R.S. 17:3883(C)(3)(a). If the teacher does not receive a satisfactory evaluation at the end of the year of remediation and reevaluation, but the evaluation team certifies that the teacher is making significant progress toward receiving a satisfactory evaluation, the teacher is scheduled for an additional year of remediation, and the teacher's provisional/in remediation certificate is extended for one year. La. R.S. 17:3883(C)(3)(b)(i). A satisfactory evaluation at the end of this second year of remediation and reevaluation causes the remediation and reevaluation program to terminate, and the teacher is not evaluated again for five years. La.R.S. 17:3883(C) (3)(b)(ii). If the teacher does not receive a satisfactory evaluation at the end of the remediation and reevaluation period, then the provisional/in remediation certificate expires and no further certification nor credentials shall be issued for a period of two years. La.R.S. 17:3883(C)(3)(b)(iii). Teachers who fail to maintain a valid teaching certificate are reported to their local school boards. La.R.S. 17:3883(C)(4).
Plaintiffs contend that by providing for revocation or expiration of teaching certificates, the CFA effectively allows BESE to discharge a local school board employee[4] and thus violates the last sentence of La. Const. art. VIII § 3(A):

*189 § 3. State Board of Elementary and Secondary Education
Section 3. (A) Creation; Functions. The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees.

(emphasis added).
In order to analyze this contention, we must consider the nature of BESE's role within the overall constitutional framework of education. We begin from the proposition that constitutional provisions, no less than other laws, should be construed so as to give effect to the purpose indicated by a fair interpretation of the language used, and in the event of a conflict or inconsistency, provisions should be construed, if possible, to allow each provision to stand and be given effect. State ex rel. Guste v. Board of Commissioners, 456 So.2d 605 (La.1984); Barnett v. Develle, 289 So.2d 129 (La.1974).
Article VIII, § 1 of the Louisiana Constitution provides that "[t]he legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system." Article VIII, § 3(A) creates BESE. The second sentence of this section provides BESE "shall supervise and control the public elementary and secondary schools ... as provided by law." In Aguillard v. Treen, 440 So.2d 704, 708 (La.1983), and Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977), we explained the phrase "as provided by law" indicated BESE's powers of supervision and control were not unfettered nor self-executing, but arose from, and were subject to, laws passed by the legislature. Article VIII, § 10 recognizes the existence of parish and city school boards "subject to control and supervision by the State Board of Elementary and Secondary Education and the power of the legislature to enact laws affecting them." Taken as a whole, these sections make the local school boards subject to BESE's powers to exercise supervision and control over the public schools, which in turn are pursuant to laws passed by the legislature.
Nonetheless, plaintiffs contend BESE's powers of supervision and control are limited by the third sentence of art. VIII, § 3. We disagree. By its clear language, the third sentence is only a limitation on BESE's other powers, not on its powers of supervision and control: "[t]he board shall have other powers, duties and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees."[5] The third sentence contemplates that the constitution or the legislature may allow BESE to exercise other powers in addition to supervision and control over the schools. However, the constitution provides that in exercising these other powers, BESE may not control the local board's business affairs nor the selection or removal of its employees. The limitation is clearly directed only at the other powers of BESE and not to the powers of supervision and control as provided by law, set forth in the second sentence of art. VIII, § 3. Further, such an interpretation is in harmony with art. VIII, § 10, which specifically makes the local school boards "subject to" supervision and control *190 by BESE. By contrast, under plaintiffs' interpretation, BESE's ability to exercise supervision and control over the schools pursuant to legislative mandate would be greatly restricted, since nearly any action by BESE regarding teachers could directly or indirectly result in some control by it over the selection or removal of teachers. We do not believe art. VIII intended to create such an anomalous situation. Rather, we find the limitation was intended to keep BESE from interfering with matters of purely local concern, such as business activities, which fall outside of the scope of supervision and control of the schools. Thus, we conclude that when BESE exercises its powers of supervision and control over the schools pursuant to a legislative mandate, it is not bound by the limitation in the third sentence.
The next issue we must address is whether certification is a function of BESE's powers of supervision and control. Certification has long been considered a prerequisite to teach. Act No. 100, § 49 of 1922 required the parish superintendent of schools "to ascertain definitely before contracting with a teacher that such teacher holds a certificate issued by the Louisiana State Board of Education." That act, with a few minor changes, has continually been a part of the statutes and is presently contained in La.R.S. 17:413:
No person shall be appointed to teach without a written contract for the scholastic year in which teaching is to be done. Every teacher shall hold a certificate of a grade sufficiently high to meet the requirements of his position. Parish superintendents of schools shall ascertain definitely, before contracting with a teacher, that the teacher holds a certificate issued by the state board of education.
Likewise, the definition of teacher for tenure purposes in La.R.S. 17:441 is "[a]ny employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate."
Historically, the mechanics of teacher certification have been a function of BESE and its predecessor, the state board of education. Article 12, § 7 of the Constitution of 1921 provided that the state board of education "shall prescribe the qualifications, and provide for the certification of the teachers of elementary, secondary, trade, normal and collegiate schools." In 1922, pursuant to this constitutional provision, the legislature adopted Act No. 100, § 8, which provided "the State Board shall have entire charge of the examination and certification of public school teachers." In 1950, the legislature adopted La.R.S. 17:411, which provided in pertinent part:
The State Board of Education shall prescribe the qualifications and provide for the certification of the teachers of elementary, secondary, trade, normal and collegiate schools.
This statute was in identical language to the article of the 1921 Constitution, State ex rel. Sibley v. Ascension Parish School Board, 222 La. 923, 64 So.2d 221 (1953), and was in effect at the time the Constitution of 1974 was enacted.[6]
Having reviewed these statutes, we find certification is considered indispensable to the status of a teacher. Both the former constitutional provision and the legislation arising from it have traditionally given BESE broad powers to regulate certification of teachers. Clearly, this power has always been at the core of BESE's function of supervision and control over the schools. We find no evidence that the Constitution of 1974 intended to make a radical change in this regard. Therefore, we conclude that the legislature may delegate the regulation of certification to BESE under its powers of supervision and control, and it is *191 of no moment if BESE's activities in this regard ultimately control the selection or removal of teachers.[7]
In Johnson v. Board of Elementary and Secondary Education, 414 So.2d 352 (La. 1982), we addressed the constitutionality of Act 236 of 1980. That act provided that BESE could revoke a teacher's certificate for five enumerated reasons. We held that decertification of a teacher by BESE on grounds other than obtaining a certificate through fraud or misrepresentation effectively removed the teacher and violated the selection or removal limitation of art. VIII, § 3. However, we failed to draw a distinction between BESE's powers of supervision and control versus its other powers. As a result, we mistakenly applied the selection and removal limitation to all of BESE's powers rather than to only its other powers. We now find that holding to be in error. Accordingly, Johnson is overruled insofar as it conflicts with this opinion.
In sum, we find that since certification clearly falls within the category of supervision and control, the decertification provisions of the CFA do not violate art. VIII, § 3. Accordingly, the trial court erred in finding certain provisions of the CFA unconstitutional.

DECREE
For the reasons assigned, that portion of the district court judgment declaring certain provisions of the Children First Act (La.R.S. 17:3871 et seq.) unconstitutional as violative of La. Const. art. VIII, § 3(A) and granting a permanent injunction is reversed. All costs are assessed against plaintiffs.
NOTES
[1] La.R.S. 17:3883(C)(1); 17:3883(C)(3)(b)(i); 17:3883(C)(3)(b)(iii); 17:3883(C)(3)(c); 17:3883(C)(3)(d); 17:3891(A); 17:3891(A)(3); 17:3891(B)(1); 17:3892(A)(3); 17:3892(A)(4); 17:3892(D).
[2] On the morning oral argument was set before this court, plaintiffs filed a "peremptory exception of lack of constitutional standing," alleging that the State of Louisiana, through the attorney general and governor had not appealed, and BESE and DOE "lacked constitutional standing to contest or otherwise appeal the declaratory judgment." In response, the attorneys for the governor and the attorney general argued that their oral motion for appeal had been granted by the trial court on February 8, 1991, although this is not in the record. They also noted the trial court's order dated March 18, 1991 granted an appeal to "defendants," implying it applied to all the defendants in the case. In addition, the state joined in the motion for expedited hearing in this court, which the state claimed supported its contention that it had properly perfected its appeal. Out of an abundance of caution, the state filed a written motion for appeal on May 11, 1991. This motion was within the devolutive appeal delay and was granted by the trial court.

We believe the trial court's order of March 18, 1991 granting an appeal to "defendants" is sufficient evidence that the trial court had in fact granted an earlier oral motion for appeal on behalf on the state. Even assuming it is not, we find the trial court's granting of the state's timely motion for appeal on May 11, 1991 cures any defects and properly puts the state's appeal before us. Accordingly, we deny plaintiffs' exception.
[3] Plaintiffs filed a motion to strike from the record certain affidavits attached to defendants' motion for expedited hearing which were excluded from the evidence at trial and ordered sealed as a proffer. That motion was denied by this court on May 8, 1991. Defendants filed a motion to supplement the record with certain evidence that was proffered at trial but not included in the record. This court granted the motion on May 8, 1991. The proffered evidence indicates that certain teachers were employed in the public schools without certification but under special permits issued by BESE. The trial judge found this evidence was not relevant and held it inadmissible. Having considered the proffered evidence, we find no error in this ruling.
[4] We assume for purposes of this opinion that decertification of a teacher by BESE is tantamount to removal of the teacher. We note, however, that the CFA does not mention removal, but merely states "[t]eachers who have failed to maintain a valid teaching certificate shall be reported to their local board." Thus, the actual removal is done by the local school board.
[5] It has been held that teachers are employees of the local school boards. Bourgeois v. Orleans Parish School Board, 219 La. 512, 53 So.2d 251 (1951); La.R.S. 17:441(1). Interestingly, art. VIII's predecessor provision, art. 12, § 4 of the Constitution of 1921 did not use the term "employees," but provided that the board of education "shall not control the business affairs of parish school boards, nor the selection or removal of their officers and directors." (emphasis added). No explanation of the change from "directors" to "employees" is given in the deliberations of the constitutional convention.
[6] La.R.S. 17:411 was repealed as "superseded" in 1982. 1982 La. Acts No. 650. Apparently, the legislature felt La.R.S. 17:411 was unnecessary since La.R.S. 17:7(6)(a) accomplished the same objective. That statute requires BESE to

[p]rescribe the qualifications and provide for the certification of teachers in accordance with applicable law, which qualifications and requirements shall be such as to insure that certification shall be a reliable indicator of the minimum current ability and proficiency of the teacher to educate at the grade level and in the subject(s) to which the teacher is assigned.
[7] Of course, a tenured teacher is still entitled to the due process protections of the Teacher Tenure Act (La.R.S. 17:441 et seq.) prior to removal. Plaintiffs have argued that once a teacher's certification is revoked by BESE, he or she no longer falls under the definition of teacher for tenure purposes and is no longer entitled to a hearing under the tenure laws. Plaintiffs therefore argue that BESE's action effectively deprives the teacher of tenure without a hearing. We find no merit to this argument, since La.R.S. 17:3893 of the CFA specifically deals with this situation:

Notwithstanding any provision of law to the contrary, no permanent teacher shall be terminated by an employing school board as a result of his certificate expiring or not being renewed until such teacher has been granted a hearing pursuant to the tenure laws of this state.