STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CA 0699
NO. 2025 CW 0448

CITY OF BAKER SCHOOL BOARD

VERSUS

BOARD OF ELEMENTARY AND SECONDARY EDUCATION,
RECOVERY SCHOOL DISTRICT, AND GEO ACADEMIES EBR

*Judgment Rendered:*   SEP 1 9 2025

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C761785

The Honorable Tarvald A. Smith, Judge Presiding

* * * * * * * *

Jimmy R. Faircloth, Jr.                  Counsel for Defendant/Appellant
Aaron Green                              Louisiana Department of Education
Mary Katherine Price
Alexandria, Louisiana


Dannie P. Garrett, III                   Counsel for Plaintiff/Appellee
Baton Rouge, Louisiana                   City of Baker School Board


* * * * * * * *

BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.

**THERIOT, J.**

The Louisiana Department of Education ("DOE") appeals from a trial court judgment granting a preliminary injunction in favor of the City of Baker School Board ("School Board"). For the reasons set forth herein, we vacate the trial court's May 12, 2025 order and reverse the April 28, 2025 trial court judgment granting the preliminary injunction.

## APPLICABLE SUBSTANTIVE LAW

Article VIII, Section 1 of the Louisiana Constitution of 1974 provides that the Louisiana Legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system. With the enactment of La. R.S. 17:10(A), the legislature tasked the DOE with approval of each public elementary and secondary school in the state in accordance with minimum standards submitted by the DOE and approved by the Louisiana State Board of Elementary and Secondary Education ("BESE").

BESE is a constitutionally created entity with a mandate to supervise and control the public elementary and secondary schools and special schools in the state. La. Const. Art. VIII, § 3(A); *Hill v. Jindal*, 2014-1757, p. 22 (La.App. 1 Cir. 6/17/15), 175 So.3d 988, 1006, *writ denied*, 2015-1394 (La. 10/23/15), 179 So.3d 600. To this end, BESE is statutorily mandated to provide for a statewide system of accountability for schools and school districts based on student achievement and minimum standards for the approval of schools by the DOE, as well as procedures and standards for aligning the school accountability system with the requirements of the statutes concerning failed schools and their transfer to the Recovery School District ("RSD").[1]  La. R.S. 17:10.1; La. R.S. 17:10.5(A)(2).  In fulfilling its

---

[1] The RSD was established to provide an appropriate education for children attending any public elementary or secondary school that has been transferred to the jurisdiction of the RSD pursuant to La. R.S. 17:10.5. The RSD has the authority to provide for the supervision, management, and operation of a school placed under its jurisdiction with all the same power and authority as the prior system from which it was transferred. La. R.S. 17:1990.

constitutional and statutory responsibilities, BESE has been granted the authority by the legislature to adopt rules in accordance with the Administrative Procedure Act for any program, statement, guideline, or requirement for conduct or action prescribed by BESE, the state superintendent of education, and the DOE. La. R.S. 17:6.1. Accordingly, BESE has developed a school accountability system, promulgated in accordance with La. R.S. 17:10.1. See LAC 28:XI.101, et seq.

Each school operating under the jurisdiction and direction of any city, parish, or other local public school board or any other public entity ("local educational agency") that is labeled academically unacceptable pursuant to the school accountability system established by rules adopted by BESE shall be designated as a failed school. La. R.S. 17:10.5(A)(1). The local educational agency shall be required to develop a reconstitution plan to describe the goals, strategies, and interventions that will be used to address the challenges of the failed school. LAC 28:XI.1603(A). The required content of the reconstitution plan and the level of approval required for the plan is based on the number of consecutive years the school has been labeled academically unacceptable. LAC 28:XI.1603(A). Further, BESE has the authority to take control of public elementary or secondary schools that have been determined to be failing and to supervise, manage, and operate failing schools or to provide for their supervision, management, and operation. See La. Const. Art. VIII, § 3(A); La. R.S. 17:10.5; La. R.S. 17:10.6(B)(2)(a); see also *Orleans Parish School Board v. Pastorek*, 2012-1174, p. 4 (La.App. 1 Cir. 8/14/13), 122 So.3d 1106, 1109, *writ denied*, 2013-2207 (La. 3/21/14), 135 So.3d 617. Pursuant to La. R.S. 17:10.5, a failed school shall be removed from the jurisdiction of the local educational agency and transferred to the jurisdiction of the RSD under certain circumstances, provided BESE approves the transfer.

BESE is authorized to approve the transfer of a failed school to the RSD if one or more of the following criteria exists: (a) the local educational agency fails to

3

present the required reconstitution plan to BESE, or (b) the local educational agency presents a reconstitution plan that is unacceptable to BESE, or (c) the local educational agency fails at any time to comply with the terms of the reconstitution plan approved by BESE, or (d) the school has been labeled an academically unacceptable school for four consecutive years. La. R.S. 17:10.5(A)(1); LAC 28:CXLV.501(A)(1). Under the school accountability system, the state superintendent is to make a recommendation to BESE regarding the transfer of an academically unacceptable school to the RSD and propose performance objectives and the best methods for achieving those objectives in order to bring the failed school to an acceptable level of performance such that the school earns the ability to transfer out of the RSD. LAC 28:CXLV.501(A)(1). Following the state superintendent's recommendation, BESE shall make the final decision regarding the transfer of an academically unacceptable school to the RSD and the appropriate method of operating the school. LAC 28:CXLV.501(A)(1)(d). Such a failed school would then be reorganized, as necessary, and operated by the RSD in such a manner as to bring the school to an acceptable level of performance. La. R.S. 17:10.5(B); LAC 28:CXLV.501(A)(1).

In its operation of the failed school, the RSD shall have the right to use any school building and all facilities and property otherwise part of the school and recognized as part of the facilities or assets of the school prior to its placement in the RSD and shall have access to such additional facilities as are typically available to the school, its students, and faculty and staff prior to its placement in the RSD. Such use shall be unrestricted, except that the RSD shall be responsible for and obligated to provide for routine maintenance and repair such that the facilities and property are maintained in as good an order as when the right of use was acquired by the RSD. La. R.S. 17:1990(B)(4)(a).

4

## FACTS AND PROCEDURAL HISTORY

In 2024, two City of Baker School System ("BSS") schools, Baker Heights Elementary School ("Baker Heights") and Baker Middle School ("Baker Middle"), were eligible for transfer to the jurisdiction of the RSD under La. R.S. 17:10.5(A)(1) by virtue of having been deemed academically unacceptable under the school accountability system for more than four consecutive years. For the 2024-2025 school year, Baker Heights shared a school building located at 5903 Groom Road with Park Ridge Academic Magnet School ("Park Ridge") grades K-5, and Baker Middle shared a school building located at 5905 Groom Road with Park Ridge grades 6-8. This shared-facility arrangement was a result of BSS schools being relocated due to flood damage sustained by several school buildings in 2016. Baker Heights was previously located at 3750 Harding Street until the 2024-2025 school year, when it began sharing the campus at 5903 Groom Road with Park Ridge grades K-5, and Baker Middle was previously located at 2550 South Street until the 2023-2024 school year, when it began sharing the campus at 5905 Groom Road with Park Ridge grades 6-8. The Harding Street and South Street school buildings remained vacant after Baker Heights and Baker Middle were relocated to the Groom Road buildings.

The reconstitution plan required by the school accountability system for schools such as Baker Heights and Baker Middle that have been labeled academically unacceptable for four or more consecutive years must include "[m]ore intensive interventions, including but not limited to possible transfer to RSD" and must be approved by BESE. See LAC 28:XI.1603(A). On September 18, 2024, BSS Superintendent James T. Stroder submitted a proposed reconstitution plan to the DOE, State Superintendent Dr. Cade Brumley, and RSD Superintendent Dr. Pamela Schooler to address the academic needs of Baker Heights and Baker Middle,

outlining the actions BSS was implementing to enhance student performance outcomes.

On November 19, 2024, Dr. Schooler sent a letter to Mr. Stroder, updating him on the RSD's "current progress in determining the structure and scope of future [RSD] interventions" at Baker Heights and Baker Middle, and noting that "[b]oth schools are now eligible for transfer to the RSD." In this letter, Dr. Schooler stated that the RSD was conducting a thorough review of the plan submitted by BSS and requested that BSS provide any updates or supplemental information to its plan by December 4, 2024.

On December 12, 2024, Dr. Schooler sent another letter to Mr. Stroder, formally notifying him that Baker Heights and Baker Middle were eligible for transfer to the RSD by virtue of having been designated as academically unacceptable for four or more consecutive years. Dr. Schooler acknowledged receipt of BSS's reconstitution plan, which she explained was currently under review, and warned that "[i]t is imperative that your school board refrains from making grade configuration or substantive school structure changes to these schools until the reconstitution plan has been reviewed by [the DOE/RSD]," explaining that "[a]ny such changes made prematurely may be perceived as an attempt to undermine the reconstitution plan process and could result in non-compliance with statewide accountability laws and policies."

Mr. Stroder and the School Board president both reached out to Dr. Schooler to inquire about the status of BSS's proposed reconstitution plan in January of 2025. Dr. Schooler advised that the plan was still being reviewed, but that a decision would likely be made by Dr. Brumley "within the next few weeks."

On February 10, 2025, Mr. Stroder sent an email to Dr. Schooler, informing her that BSS "is considering reconstituting two of its failing schools at a special board meeting on February 12, 2025" and inquiring whether there was any "input"

prior to the meeting. According to Mr. Stroder's email, the action being considered would involve "merging Baker Heights and Baker Middle School into a single K-8 school operated by a new administrative and teaching staff," and was similar to models that had been approved by BESE in other school districts.

After becoming aware of the publication of a revised agenda for the School Board's February 12, 2025 special meeting that included consideration of the closure of Baker Heights and Baker Middle, Dr. Schooler sent a letter to Mr. Stroder and the School Board members on February 12, 2025, reiterating her previous warning that any such action "**would appear to be an attempt to undermine the reconstitution plan, which in our review does not provide for the reconfiguration of the schools, including closure**" and requesting that the School Board "**cease and desist from any and all actions to close, merge, and/or alter the current structure of Baker Heights and Baker Middle.**"

The School Board proceeded with its February 12, 2025 special meeting despite the cease and desist letter. At that meeting, the School Board voted to relocate Baker Heights and Baker Middle from the campuses shared with Park Ridge at 5903 and 5905 Groom Road back to their previous sites and to close both failing schools at the end of the 2024-2025 school year.

Consideration of the transfer of Baker Heights and Baker Middle to the jurisdiction of the RSD was placed on the agenda for BESE's School Innovation and Turnaround Committee's March 11, 2025 meeting and BESE's March 12, 2025 board meeting. Prior to the committee meeting, Drs. Schooler and Brumley met with Mr. Stroder on March 7, 2025 to discuss various alternatives for Baker Heights and Baker Middle that would provide BSS with an opportunity to maintain control in the process while ensuring the best outcomes for students, including the possibility of contracting with a charter school operator to operate Baker Heights and Baker Middle. However, after it became clear from discussions with Mr. Stroder

7

that an agreement could not be reached right away, Drs. Schooler and Brumley elected to proceed with making a recommendation to BESE on the transfer of the schools to the RSD at its March meetings.

On March 11, 2025, BESE's School Innovation and Turnaround Committee recommended that BESE approve the transfer of Baker Heights and Baker Middle to the RSD effective May 27, 2025, noting that the schools were eligible for transfer pursuant to La. R.S. 17:10.5 because Baker Heights had been labeled as academically unacceptable for the past four years and Baker Middle had been labeled as academically unacceptable for the past nine years.[2] Thereafter, at its March 12, 2025 meeting, BESE approved the transfer of Baker Heights and Baker Middle to the jurisdiction of the RSD, effective May 27, 2025. BESE also voted to approve GEO Louisiana, Inc. ("GEO") as the direct operator for Baker Heights and Baker Middle as Type 5 charter schools, effective May 27, 2025.[3]

On April 1, 2025, Dr. Schooler sent a letter notifying BSS of the transfer of the schools to the RSD and further informing BSS that:

> In conjunction with this transfer, the RSD has the right to use any school buildings recognized as part of these schools prior to the transfer. Accordingly, the building located at 5903 Groom Rd, Baker, LA 70714 must be transferred to the RSD for its unrestricted use, effective May 27, 2025. [citation omitted]

On April 11, 2025, the School Board filed suit against BESE, the RSD, and GEO, seeking declaratory judgment and preliminary and permanent injunctions.[4] The School Board requested that the trial court render a judgment declaring that: (1) BESE did not have the authority to transfer Baker Heights and Baker Middle to the RSD under La. R.S. 17:10.5, because the School Board had already voted to close

---

[2] BESE School Innovation and Turnaround Committee Agenda for March 11, 2025, Executive Summary and Recommendations, https://go.boarddocs.com/la/bese/Board.nsf/goto?open&id=DCWQWW6B5986.

[3] BESE Official Board Minutes, Meeting of March 12, 2025, https://bese.louisiana.gov/docs/default-source/bese-official-minutes/2025-03-12-bese-meeting-minutes3c72d9649f834f72a4a5b0022fa3c853.pdf?sfvrsn=13f19645_2.

[4] The School Board also filed a petition for nullity under the open meetings law and request for injunctive relief on April 11, 2024, assigned Docket No. C-761784 (19th JDC). The School Board's appeal from the trial court judgment dismissing this action is pending before another panel of this court in Docket No. 2025 CA 0799.

those schools; (2) BESE did not have authority to transfer the property at 5903 Groom Road for the unrestricted use of the RSD, as this violates the business affairs provision of La. Const. Art. VIII, § 3(A); and (3) any contract between the RSD and GEO pertaining to Baker Heights and/or Baker Middle or the facilities at 5903 Groom Road is null and void. The School Board further sought preliminary and permanent injunctions enjoining BESE, the RSD, and GEO from taking any actions toward exercising any rights under the purported transfer of Baker Heights and/or Baker Middle or interfering with Park Ridge's operations at both 5903 and 5905 Groom Road.

BESE opposed the request for a preliminary injunction on the grounds that the School Board is not likely to succeed on the merits and has failed to show irreparable injury or harm specific to BESE. The RSD filed dilatory exceptions of lack of procedural capacity and unauthorized use of a summary proceeding, and BESE joined in the exception of unauthorized use of a summary proceeding. In the first exception, the RSD pointed out that it is not a juridical person capable of being sued, and that the proper party defendant for a claim against RSD is the DOE, *citing Tankerson v. Vallas*, 2010-0102, p. 1 (La.App. 4 Cir. 3/10/10), 34 So.3d 355, 356 ("[T]he RSD is not a juridical person and . . . the proper party to be sued in a claim for or against the RSD is the DOE."). In the second exception, the RSD and BESE argued that a preliminary injunction could not be issued since the School Board sought mandatory (as opposed to prohibitory) injunctive relief, *citing Deshotels v. White*, 2016-0889, p. 7 (La.App. 1 Cir. 8/16/17), 226 So.3d 1211, 1218, *writ denied*, 2017-1565 (La. 12/5/17), 231 So.3d 628 (recognizing that, as a matter of law, it is not possible to issue a mandatory preliminary injunction). In response, the School

9

Board filed a supplemental and amending petition, replacing the RSD with the DOE as a defendant and withdrawing the request for a preliminary injunction as to BESE.[5]

A hearing was held on April 21, 2025 on the School Board's request for a preliminary injunction against the DOE. The School Board argued that once they voted to close Baker Heights and Baker Middle, BESE no longer had the authority to transfer the schools to the RSD's jurisdiction under La. R.S. 17:10.5. Further, the School Board argued that the issuance of a preliminary injunction is necessary because the RSD expressed an intention to exercise its right to the unrestricted use of the building at 5903 Groom Road effective May 27, 2025, which would displace Park Ridge, a school that is not failing and not eligible for transfer to the RSD.

Mr. Stroder testified at the preliminary injunction hearing. At the time Mr. Stroder became superintendent of BSS in January of 2024, both Baker Heights and Baker Middle had been failing for some time; however, to his knowledge, there had not been any effort by BESE to take control of the failing schools prior to the 2024-2025 school year. In June of 2024, BSS began working with a program called the Coherence Cohort, which was developed by the DOE to work with the leadership teams in school districts that have experienced the most difficulty in exiting their labeled status of academically unacceptable. According to Mr. Stroder's understanding, BSS would receive allocated funds through the program for assessment, support, training, and coaching, and the DOE's contractor would work with BSS's leadership teams "to see if [BSS] could move those schools . . . out of academic failing status." Three BSS schools, including Baker Heights and Baker Middle, elected to participate in the program; however, at the time of the preliminary injunction hearing, there were not yet any new school accountability scores available

---

[5] Following the preliminary injunction hearing, the School Board filed two additional supplemental and amending petitions, withdrawing the request for a preliminary injunction against GEO.

10

to show whether any improvement had been made through BSS's participation in the program.

Mr. Stroder testified that the first contact he received regarding a potential takeover of Baker Heights and Baker Middle by BESE was in late August of 2024, when he was asked to submit a reconstitution plan as required under the law for all failing schools. On September 19, 2024, Mr. Stroder submitted BSS's reconstitution plan for Baker Heights and Baker Middle, along with some additional information requested by Dr. Schooler regarding district-wide and school-level percentages of uncertified teachers and per-pupil expenditures at each school in the district. Over the next few months, Mr. Stroder was told several times that the plan was under review. Although Dr. Schooler contacted him in late November to ask whether there was anything BSS wanted to add to the reconstitution plan under consideration, Mr. Stroder testified that he had already updated the reconstitution plan prior to this request based on his research into plans that had recently been approved by BESE for school districts in northern Louisiana.[6]

After being advised on January 30, 2025 that a decision had still not been made regarding BSS's reconstitution plan, Mr. Stroder informed Dr. Schooler by email on February 10, 2025 that the School Board would hold a special meeting on February 12, 2025 to consider "reconstituting" Baker Heights and Baker Middle, following similar models approved for two school districts in northern Louisiana. According to Mr. Stroder, in Grant and Caddo Parishes, plans to close failing schools and merge the students with other schools in the district had been approved, leading him to believe that BSS would be given the same opportunity. Although Mr. Stroder's February 10, 2025 email described the action under consideration by the

---

[6] Although Mr. Stroder testified that he submitted an update to the reconstitution plan in November or December of 2024, the only plan in evidence is the one dated September 18, 2024, which does not mention actions taken by the school districts in north Louisiana.

11

School Board as a "merger" of Baker Heights and Baker Middle into a single K-8 school operated by a new administrative and teaching staff, Mr. Stroder testified that the plan under consideration was actually to close Baker Heights and Baker Middle and merge the students from those two schools into Park Ridge, similar to what the local educational agencies in Grant and Caddo Parishes had been allowed to do. Although Park Ridge was a selective admissions academic magnet school and many of the students attending Baker Heights and Baker Middle would not qualify to attend, Mr. Stroder testified that the plan was to remove Park Ridge's academic magnet school status so that all of the students from the failing schools could attend Park Ridge. Mr. Stroder testified that the School Board was considering these measures as an alternative to its previously submitted reconstitution plan since no decision had yet been made on the plan, explaining that he wanted to start advertising for a turnaround principal and teachers as soon as possible while good candidates were still available.

Mr. Stroder acknowledged that Dr. Schooler contacted him and the School Board members prior to the special meeting, reminding him that "any action to reconfigure the schools would appear to be an attempt to undermine the reconstitution plan, which in our review does not provide for the reconfiguration of the schools, including closure," and requesting that the School Board "cease and desist from any and all actions to close, merge, and/or alter the current structure of Baker Heights and Baker Middle." However, Mr. Stroder explained that the School Board went ahead with its consideration of the school closures at the special meeting despite receipt of Dr. Schooler's cease and desist letter because he did not believe that Dr. Schooler's cease and desist letter "ordered" the School Board not to take any action. Instead, he believed that the letter only "requested" that the School Board not take any action until the reconstitution plan "has been reviewed" by the DOE and the RSD. Mr. Stroder further testified that Dr. Schooler's use of the

language "in our review" in her cease and desist letter implied to him that BSS's reconstitution plan had already been reviewed. At the special meeting, the School Board voted to move Baker Heights and Baker Middle back to their previous locations prior to their relocation to the Groom Road facilities and to close both schools. Mr. Stroder testified that both the relocations and the closures voted on by the School Board were to be effective as of May 21, 2025 (the last day of the school year), because "the state does not officially allow school districts to submit requests for changing facilities until mid-April."

Mr. Stroder testified that later in the evening following the School Board's special meeting, Dr. Schooler called him to request that he meet with her and Dr. Brumley the next morning. Mr. Stroder eventually met with Drs. Schooler and Brumley on March 7, 2025, where they discussed a possible alternative solution for Baker Heights and Baker Middle that would involve the School Board reversing its decision to close the schools and thereafter entering an administrative agreement with a charter operator to operate the schools. However, following the meeting, Mr. Stroder sent a letter to Drs. Schooler and Brumley, explaining that he could not immediately commit to such a plan and suggesting that "it would be most appropriate for BESE to defer any action as notice[d] in its agendas for the Committee and Board on March 11 and 12, 2025." Following receipt of this communication from Mr. Stroder, Dr. Schooler withdrew the offered alternative solution and informed him that "[a]t this time, we will be moving forward with our recommendation to BESE on [March 11, 2025] as planned."

Mr. Stroder testified that he was notified on April 1, 2025 that BESE had approved the transfer of Baker Heights and Baker Middle to the RSD, effective May 27, 2025, and that in conjunction with the transfer, the building located at 5903 Groom Road "must be transferred to the RSD for its unrestricted use, effective May 27, 2025." Mr. Stroder explained that the purported transfer of the building at 5903

13

Groom Road to the RSD was a significant problem for BSS because Park Ridge would need both Groom Road buildings the following school year to accommodate the large number of students being merged from Baker Heights and Baker Middle into Park Ridge pursuant to the School Board's vote, and also because only the building at 5903 Groom Road contains a full kitchen, which BSS uses to prepare meals for the students at both Groom Road buildings.

Dr. Schooler also testified at the preliminary injunction hearing. Dr. Schooler testified that she officially became the superintendent of the RSD in March of 2024, although she had been acting in that role since January of 2024 due to a vacancy. She explained that although BSS elected in June of 2024 to participate in the Coherence Cohert in an attempt to improve the failing schools, that program is a long term process, not a "miracle turnaround," and the students at Baker Heights and Baker Middle had been in failing schools for too long and could not afford to wait and see whether any improvement resulted from BSS's participation in the program. Dr. Schooler believed that BSS needed an operator for the schools with proven results that could turn around the academic and cultural situations and make significant progress immediately.

Dr. Schooler testified that following BESE's March 12, 2025 vote to transfer Baker Heights and Baker Middle to the jurisdiction of the RSD, a decision was made to transfer only the building at 5903 Groom Road to the RSD, despite the fact that the RSD was seemingly entitled to the unrestricted use of both Groom Road buildings pursuant to La. R.S. 17:1990(B)(4)(a). Dr. Schooler explained that this decision was made because the Groom Road facilities had been shared with Park Ridge, which would still need a building in which to operate. Noting that Baker Heights and Baker Middle had a total of roughly 539 students, while Park Ridge had only "around a hundred" students, the RSD elected to use the larger building located

14

at 5903 Groom Road and to leave the smaller building located at 5905 Groom Road available for Park Ridge's use.

Dr. Schooler explained that every school district is unique, and a solution for one failing school will not necessarily be the right solution for another. Dr. Schooler acknowledged that merging a failing school into a higher performing school is sometimes a viable option; however, she explained that it was not appropriate in this case, given the fact that there was not a higher performing school available for the students at Baker Heights and Baker Middle to attend. In the case of the failing school in Grant Parish, Dr. Schooler explained that an agreement was reached by the DOE and the local educational agency that allowed the local educational agency to close the failing school. This agreement was based on consideration of a number of factors, including the school system, which was ranked 14th out of 69 school districts in the state, its leadership, its action plan, and the availability of "higher performing seats" for the failing school's students at a "B" school nearby. In addition, the agreement was contingent upon the local educational agency's development of a reconstitution plan containing certain terms specified by the DOE. In contrast, Dr. Schooler explained that Baker Heights and Baker Middle have been failing schools for many years consecutively, BSS is ranked 69th out of 69 school districts in the state and is the only failing school district in the state, and the only other BSS school Baker Heights and Baker Middle could be merged with, Park Ridge, is a selective admissions academic magnet school, meaning that many of the students at Baker Heights and Baker Middle would not qualify to attend the school. Based on the different circumstances, Dr. Schooler explained that the plan that was approved for the failing school in Grant Parish was not deemed appropriate for BSS. Dr. Schooler also testified about another instance where a local educational agency was allowed to close a failing school that was eligible for transfer to the RSD, explaining that the decision was based on the specific circumstances (including the fact that the local

15

educational agency had already chosen an approved charter operator that was poised to take over) and that the local educational agency had communicated with the RSD and BESE throughout the process, keeping them informed of its plans.

Dr. Schooler testified that she explained to Mr. Stroder that the decision on the best solution for Baker Heights and Baker Middle would be made after consideration of all factors, including BSS's proposed reconstitution plan, school visits, and multiple meetings and phone conversations with leadership. In addition, Dr. Schooler testified that she specifically informed Mr. Stroder that the decision would probably be made in March or April. Further, although BSS was required under the law to submit a reconstitution plan for its failed schools, it was made clear to Mr. Stroder from the very beginning that the schools were eligible for and being considered for transfer to the RSD based on the fact that they have been labeled academically unacceptable for more than four consecutive years.

Dr. Schooler testified that she first learned that the School Board was considering a vote to close Baker Heights and Baker Middle two days before the special meeting, when one of her team members happened to see the published agenda. Concerned that the actions being considered by the School Board were not in the best interests of the students and were simply an attempt by BSS to circumvent the process to avoid a takeover of the schools by BESE, Dr. Schooler sent the cease and desist letter to Mr. Stroder and the School Board members prior to the meeting. Dr. Schooler explained that "the last thing we want are our school districts circumventing the process and getting around the actual part that we feel could help our students." When she and Dr. Brumley were finally able to meet with Mr. Stroder almost a month later, they made one last attempt to reach an agreement that would be appropriate for the schools and school system, which she testified would involve contracting with a charter operator to operate Baker Heights and Baker Middle. However, Dr. Schooler testified that it was clear that the School Board was opposed

16

to the idea of a charter operator coming in, and Mr. Stroder told her and Dr. Brumley at the March 7, 2025 meeting that "that probably would not happen, but he would bring it back to the board and [gauge] his board." After being informed by Mr. Stroder that it would take a while to even get the board members together to vote on the proposed agreement, and being doubtful that BSS (the only failing school district in the state) was "postured to really move forward and make decisions that are best for our students," Dr. Schooler elected to move forward with consideration of the transfer of the schools to the RSD at BESE's upcoming March 11 and 12 committee and board meetings.

Thomas Lambert, the DOE's Assistant Superintendent for Assessments, Accountability, and Analytics, testified at the preliminary injunction hearing concerning the DOE's process for school closures and relocations. According to Mr. Lambert, when a school system is considering closing or consolidating schools for the next academic year, it is required to consult the DOE before making a decision in order to understand what the academic ramifications would be from an accountability perspective. Thereafter, such requests are reviewed by the DOE "to ensure that it is not a way to subvert accountability." Mr. Lambert testified that as of the time of the preliminary injunction hearing, no request had been submitted by BSS for either a closure, reconfiguration, or relocation of Baker Heights and Baker Middle; however, he explained that if such a request is received, the DOE would take into consideration the fact that merging several hundred students from failing schools into a school with approximately one hundred students would result in the remaining school (Park Ridge) becoming a failing school eligible for transfer to the RSD.

At the conclusion of the April 21, 2025 hearing on the School Board's request for a preliminary injunction, the trial court found that the School Board had proven a substantial likelihood of prevailing on the merits. The trial court rendered a

17

judgment dated April 28, 2025, preliminarily enjoining DOE from exercising any rights under the purported transfer of Baker Heights and/or Baker Middle to the RSD or interfering with Park Ridge's operations at both 5903 and 5905 Groom Road during the pendency of this matter.

The DOE filed a notice of intent to apply for supervisory writs and requested that the trial court issue a stay of the preliminary injunction pending disposition of the writ application pursuant to Uniform Rules of Courts of Appeal Rule 4-4(A)[7] in order to maintain the status quo and allow for the orderly administration of affairs necessary for the upcoming school year. On May 7, 2025, the trial court signed an order granting the stay of the preliminary injunction judgment pending disposition of the DOE's writ application by this Court.

The DOE also filed a motion for appeal of the April 28, 2025 judgment pursuant to La. C.C.P. art. 3612, and further requested a stay of the preliminary injunction judgment during the pendency of the appeal to maintain the status quo and allow for the orderly administration of affairs necessary for the upcoming school year. The trial court granted the motion for appeal on May 7, 2025, and ordered that the April 28, 2025 preliminary injunction judgment be suspended during the pendency of the appeal.

Thereafter, on May 12, 2025, the trial court issued two orders, vacating the portions of its May 7, 2025 orders granting the stay of the April 28, 2025 judgment pending disposition of DOE's writ application and suspending the April 28, 2025 judgment pending appeal.

In its supervisory writ application, the DOE sought a stay of the preliminary injunction pending appeal, as well as reversal of the trial court judgment granting

---

[7] Uniform Rules of Courts of Appeal Rule 4-4(A) provides:

> When an application for writs is sought, further proceedings may be stayed at the trial court's discretion. Any request for a stay of proceedings should be presented first to the trial court. The filing of, or the granting of, a writ application shall not stay further proceedings unless the trial court or the Court of Appeal expressly orders a stay.

18

the preliminary injunction. A writ panel of this Court denied the DOE's request that we exercise our supervisory jurisdiction to suspend or stay the preliminary injunction. However, to the extent that the writ application sought supervisory review of the merits of the preliminary injunction, that portion of the writ was referred to the appeal panel. *City of Baker School Board v. Board of Elementary and Secondary Education*, 2025-0448 (La.App. 1 Cir. 5/30/25) (unpublished action).

## ASSIGNMENTS OF ERROR

On appeal, the DOE raised three assignments of error:

1. The trial court lacked jurisdiction to vacate its order suspending the preliminary injunction judgment during appeal.

2. The trial court erred in overruling the DOE's objection to proceeding without BESE fully joined.

3. The trial court erred in granting the preliminary injunction against the DOE.

## DISCUSSION

*Jurisdiction to Convert to Devolutive Appeal*

In their first assignment of error, the DOE argues that the trial court erred in converting its suspensive appeal to a devolutive appeal, since the trial court had already been divested of jurisdiction over all matters in the case reviewable under the appeal at the time the trial court signed the May 12, 2025 order vacating portions of its prior appeal order.

Louisiana Code of Civil Procedure article 3612(B) provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders." In *Killeen v. Jenkins*, 98-2675, p. 4 (La. 11/5/99), 752 So.2d 146, 148 (per curiam), the Louisiana Supreme Court held that in those cases where the trial court has granted a stay of further proceedings in a matter involving a preliminary injunction pursuant to La.

19

C.C.P. art. 3612(B), the appeal is in the nature of a suspensive appeal, but where the trial court has declined to grant a stay in a preliminary injunction matter, the appeal is in the nature of a devolutive appeal. In this case, the trial court exercised its discretion to suspend the preliminary injunction judgment during the pendency of the appeal, effectively granting a suspensive appeal pursuant to La. C.C.P. art. 3612(B).

Louisiana Code of Civil Procedure article 2088 provides:

A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal, or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to do any of the following:

(1) Allow the taking of a deposition, as provided in Article 1433.

(2) Extend the return day of the appeal, as provided in Article 2125.

(3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131.

(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132.

(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126.

(6) Grant an appeal to another party.

(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal.

(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658.

(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal.

(10) Set and tax costs, expert witness fees, and attorney fees.

20

(11)    Amend a judgment to provide proper decretal language in accordance with Article 1918 or 1951.

(12)    Repealed by Acts 2025, No. 250, § 4.

B. In the case of a suspensive appeal, when the appeal bond is not timely filed and the suspensive appeal is thereby not perfected, the trial court maintains jurisdiction to convert the suspensive appeal to a devolutive appeal, except in an eviction case.

The May 7, 2025 order granting an appeal and suspending the judgment pending appeal divested the trial court of jurisdiction over all matters reviewable on appeal. As none of the exceptions set forth in La. C.C.P. art. 2088 are applicable, the trial court lacked jurisdiction to later vacate portions of that appeal order, and the May 12, 2025 order is a nullity. See *Louisiana-Annunciation Condominium Association, Inc. v. Kennedy*, 2023-0327, pp. 8-9 (La.App. 4 Cir. 11/16/23), 377 So.3d 804, 811 (where the city court signed an order granting the appeal, it divested itself of jurisdiction and lacked authority to later deny the appeal by altering the appeal order); see also *Bond v. Louisiana Purchase Equestrian Estates, LLC*, 2019-0957, p. 7 (La.App. 1 Cir. 2/21/20), 299 So.3d 120, 125 (any order or judgment rendered after the trial court's jurisdiction has been divested by the granting of an appeal is null). Accordingly, the trial court's May 12, 2025 order vacating portions of its May 7, 2025 order granting the DOE's appeal is vacated.

*Merits of the Preliminary Injunction*

The DOE also argues on appeal that the trial court erred in granting the preliminary injunction on the merits because BESE's actions in transferring Baker Heights and Baker Middle to the RSD were constitutionally and statutorily authorized and because the School Board cannot prove irreparable harm.

A preliminary injunction is an interlocutory procedural device designed to preserve the status quo between the parties, pending a trial on the merits. Generally, plaintiffs seeking the issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a prima facie showing that they will

21

prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. *Hill*, 2014-1757 at p. 18, 175 So.3d at 1002. However, a threat of irreparable injury need not be shown when the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. *Hill*, 2014-1757 at p. 18, 175 So.3d at 1002. The only issues to be considered at a hearing on a preliminary injunction are whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. *Morris v. Trust Technologies, LLC*, 2018-0831, p. 5 (La.App. 1 Cir. 2/28/19), 274 So.3d 15, 19.

Although the judgment on the preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612(B); *Hill*, 2014-1757 at p. 18, 175 So.3d at 1002. We are, however, mindful that appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. *Hill*, 2014-1757 at pp. 18-19, 175 So.3d at 1002. However, the application of the abuse of discretion standard of review is based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion. Legal issues regarding the grant or denial of a preliminary injunction are reviewed de novo on appeal. *UMB Bank, National Association v. Swafford*, 2023-0245, p. 4 (La.App. 4 Cir. 11/7/23), 377 So.3d 347, 350.

In order to be entitled to a preliminary injunction, the School Board was required to make a prima facie showing that it will prevail on the merits. In its suit for declaratory judgment, the School Board sought a declaration that BESE did not have the authority to transfer Baker Heights and Baker Middle to the RSD under La.

22

R.S. 17:10.5 because the School Board had already voted to close those schools. The School Board urges that it was not required to prove irreparable injury in order to obtain a preliminary injunction because it alleged the deprivation of a constitutional right or that the act sought to be enjoined is unlawful.

In finding that the School Board was entitled to the issuance of a preliminary injunction, the trial court reasoned:

> [A]ll that this court is required to look at is the substantial likelihood of prevailing on the merits. I think [the School Board] has put forth enough evidence to show that this is a high possibility.
>
> Clearly . . . if I'm looking at this statute right, the Baker City School Board acted in good faith in that they, number one, they presented a plan of failed schools that BESE did not act on and should have acted on. If they had acted on this, then we're not here. . . .
>
> Second, they did present a reconstitution plan. . . . They waited, they tried to coordinate with BESE and no response.
>
> Furthermore, [the School Board] has put forth evidence of similar situations where the [DOE] and/or BESE . . . worked with parishes previously and been allowed to do what [BSS] wants to do and is currently doing.
>
> So, for those reasons, I'm going to grant the relief as prayed for by [the School Board].

Thus, it is clear that the trial court based its finding that the School Board showed a substantial likelihood of prevailing on the merits on its interpretation of La. R.S. 17:10.5 to mean that once the School Board submitted a reconstitution plan to BESE (as required under the school accountability system for every academically unacceptable school, regardless of how many years the school has been labeled academically unacceptable[8]), BESE was required to explicitly reject that plan before transferring the failing schools to the jurisdiction of the RSD. Our review of the plain language of the statute reveals no such requirement.

Louisiana Revised Statutes 17:10.5 provides, in pertinent part:

---

[8] See LAC 28:XI.1603(A).

23

A. (1) An elementary or secondary school operating under the jurisdiction and direction of any city, parish, or other local public school board or any other public entity which is academically unacceptable under a uniform statewide program of school accountability established pursuant to rules adopted by the State Board of Elementary and Secondary Education under authority of law, referred to in this Section as "the state board", shall be designated as a failed school. When a city, parish, or other local public school board or other public entity: (a) fails to present a plan to reconstitute the failed school to the state board, as required pursuant to such an accountability program, **or** (b) presents a reconstitution plan that is unacceptable to the state board, **or** (c) fails at any time to comply with the terms of the reconstitution plan approved by the state board, **or** (d) the school has been labeled an academically unacceptable school for four consecutive years, the school shall be removed from the jurisdiction of the city, parish, or other local public school board or other public entity and transferred to the jurisdiction of the Recovery School District established in R.S. 17:1990, provided the state board approves the transfer. (emphasis added).

Words and phrases of a statute shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. Unless it is otherwise clearly indicated by the context, whenever the term "or" is used in the Revised Statutes, it is used in the disjunctive and does not mean "and/or." La. R.S. 1:9. When the wording of a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. In addition to the absence of any requirement that BESE explicitly reject a school system's reconstitution plan, the use of the disjunctive "or" after each numbered criteria for transfer makes it clear that the failing school may be transferred to the jurisdiction of the RSD if any <u>one</u> of the criteria for transfer exists. It is undisputed that Baker Heights and Baker Middle were eligible for transfer to the RSD under criteria 4, based on their status as failing schools for more than four consecutive years. Accordingly, the trial court erred as a matter of law in interpreting the statute to add an additional requirement not included by the legislature.

The School Board sought a declaration that BESE did not have the authority to transfer Baker Heights and Baker Middle to the jurisdiction of the RSD under La.

24

R.S. 17:10.5 because the School Board had already voted to close the schools, as well as a declaration that BESE's purported transfer of the property located at 5903 Groom Road to the RSD for its unrestricted use was unlawful in that it violated the business affairs provision of La. Const. art. VIII, § 3(A).

Article VIII, § 3(A) of the Louisiana Constitution provides:

> Section 3. (A) Creation; Functions. [BESE] is created as a body corporate. It shall supervise and control the public elementary and secondary schools and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. [BESE] shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a city, parish, or other local public school board or the selection or removal of its officers and employees; however, [BESE] shall have the power to supervise, manage, and operate or provide for the supervision, management, and operation of a public elementary or secondary school which has been determined to be failing, including the power to receive, control, and expend state funds appropriated and allocated pursuant to Section 13(B) of this Article, any local contribution required by Section 13 of this Article, and any other local revenue available to a school board with responsibility for a school determined to be failing in amounts that are calculated based on the number of students in attendance in such a school, all in the manner provided by and in accordance with law.

The School Board contends that by attempting to transfer Baker Heights and Baker Middle to the RSD (including unrestricted use of the school buildings associated with those schools) when the School Board had already voted to relocate the schools to their prior campuses and close the schools, BESE exceeded its authority and violated the business affairs provision of Article VIII, § 3(A), which prohibits BESE from exercising control over the business affairs of a city, parish, or other local public school board.

The Louisiana Supreme Court discussed the limitations imposed on BESE's power by the business affairs provision in *Eiche v. Louisiana Board of Elementary and Secondary Education*, 582 So.2d 186:

> ... The second sentence of [Article VIII, § 3(A)] provides BESE "shall supervise and control the public elementary and secondary schools ... as provided by law." In *Aguillard v. Treen*, 440 So.2d 704,

25

708 (La. 1983), and *Board of Elementary and Secondary Education v. Nix*, 347 So.2d 147 (La.1977), we explained the phrase "as provided by law" indicated BESE's powers of supervision and control were not unfettered nor self-executing, but arose from, and were subject to, laws passed by the legislature. Article VIII, § 10 recognizes the existence of parish and city school boards "subject to control and supervision by [BESE] and the power of the legislature to enact laws affecting them." Taken as a whole, these sections make the local school boards subject to BESE's powers to exercise supervision and control over the public schools, which in turn are pursuant to laws passed by the legislature.

Nonetheless, plaintiffs contend BESE's powers of supervision and control are limited by the third sentence of art. VIII, § 3. We disagree. By its clear language, the third sentence is only a limitation on BESE's *other powers*, not on its powers of supervision and control: "[t]he board shall have *other powers, duties and responsibilities as provided by this constitution or by law*, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees." The third sentence contemplates that the constitution or the legislature may allow BESE to exercise *other powers* in addition to supervision and control over the schools. However, the constitution provides that in exercising these other powers, BESE may not control the local board's business affairs nor the selection or removal of its employees. The limitation is clearly directed only at the other powers of BESE and not to the powers of supervision and control as provided by law, set forth in the second sentence of art. VIII, § 3. Further, such an interpretation is in harmony with art. VIII, § 10, which specifically makes the local school boards "subject to" supervision and control by BESE. By contrast, under plaintiffs' interpretation, BESE's ability to exercise supervision and control over the schools pursuant to legislative mandate would be greatly restricted, since nearly any action by BESE regarding teachers could directly or indirectly result in some control by it over the selection or removal of teachers. We do not believe art. VIII intended to create such an anomalous situation. *Rather, we find the limitation [the business affairs provision] was intended to keep BESE from interfering with matters of purely local concern, such as business activities, which fall outside of the scope of supervision and control of the schools. Thus, we conclude that when BESE exercises its powers of supervision and control over the schools pursuant to a legislative mandate, it is not bound by the limitation in the third sentence.*

*Eiche*, 582 So.2d 186, 189 (La. 1991) (footnotes omitted) (emphasis added and original).

The business affairs provision of Article VIII, § 3(A) is further limited by the provision regarding failing schools that immediately follows it:

[BESE] shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a city, parish, or other local public school board or the selection or removal of its officers and employees; *however,*

26

*[BESE] shall have the power to supervise, manage, and operate or provide for the supervision, management, and operation of a public elementary or secondary school which has been determined to be failing, including the power to receive, control, and expend state funds appropriated and allocated pursuant to Section 13(B) of this Article, any local contribution required by Section 13 of this Article, and any other local revenue available to a school board with responsibility for a school determined to be failing in amounts that are calculated based on the number of students in attendance in such a school, all in the manner provided by and in accordance with law.*

La. Const. art. VIII, § 3(A) (emphasis added).

Along with this constitutional provision authorizing BESE to "supervise, manage, and operate or provide for the supervision, management, and operation [of failing schools] in the manner provided by and in accordance with law," which was added to Article VIII, § 3(A) by amendment in 2003, the legislature passed several statutes that went into effect upon approval of the amendment, including La. R.S. 17:10.5, which defines a failing school as one that had been designated as academically unacceptable under a uniform statewide program of school accountability established by rules adopted by BESE and provides for the transfer of a failing school to the jurisdiction of the RSD upon approval by BESE, and La. R.S. 17:1990, which created the RSD and authorized it to provide for the supervision, management, and operation of a school placed under its jurisdiction and to use any school building recognized as part of the school prior to its transfer to the jurisdiction of the RSD. See *United Teachers of New Orleans v. State Board of Elementary & Secondary Education*, 2007-0031, pp. 5-7 (La.App. 1 Cir. 3/26/08), 985 So.2d 184, 191.

In La. R.S. 17:10.1(B), the legislature mandated that BESE provide for a school accountability system that includes, at a minimum:

. . . clear and appropriate standards for schools and school districts, indicators for the assessment of schools and school districts, student achievement baselines, student growth targets, and appropriate minimum levels of student achievement for each public school and school district, rewards and corrective actions, specific intervals for

27

assessment and reassessment of schools and school districts, a review process for evaluating growth targets, and technical assistance.

The school accountability system promulgated by BESE in accordance with the law provides as follows for schools requiring reconstitution, i.e. any school labeled academically unacceptable[9]:

> Districts shall notify [BESE] of all school closures and reconstitution by December 31 of the previous academic year. Notice shall include requests for site code changes, grade reconfigurations, and attendance zone changes. Requests to close schools after October 1 will not be approved until the end of the current academic year.

LAC 28:XI.2301(A).

The School Board did not present any evidence that it submitted a request for a site code change (relocation of Baker Heights and Baker Middle), grade reconfigurations (merging Baker Heights and Baker Middle into a single school for grades K-8), attendance zone changes, or to close the schools prior to its February 12, 2025 vote to relocate the schools to their prior (now abandoned) campuses and to close the schools at the end of the school year as required by the school accountability program. As BESE's promulgation of the rule set forth in LAC 28:XI.2301(A) is an exercise of its powers of supervision and control over the schools pursuant to a legislative mandate, it is not bound by the limitation in the business affairs provision. See Eiche, 582 So.2d at 190. Accordingly, the School Board has not shown a substantial likelihood that it will prevail on the merits of its claim that BESE did not have the authority to transfer Baker Heights and Baker Middle to the jurisdiction of the RSD under La. R.S. 17:10.5, because the School Board had already voted to close the schools, or that BESE's purported transfer of the property located at 5903 Groom Road to the RSD for its unrestricted use pursuant to La. R.S. 17:1990(B)(4)(a) was unlawful in that it violated the business affairs provision of La. Const. art. VIII, § 3(A).

---

[9] See LAC 28:XI.1603.

As we do not find that the School Board carried its burden of proving a substantial likelihood of success on the merits, the trial court's issuance of a preliminary injunction was in error, and we need not consider whether the School Board proved that irreparable injury or loss would result without the preliminary injunction. Accordingly, the judgment of the trial court granting the School Board's request for a preliminary injunction against the DOE is reversed, and this matter is remanded to the trial court for additional proceedings.[10,11]

## CONCLUSION

For the reasons set forth herein, the May 12, 2025 trial court order vacating portions of its May 7, 2025 appeal order is vacated, the April 28, 2025 judgment granting a preliminary injunction is reversed, and the supervisory writ application is denied as moot. Costs of this appeal, in the amount of $937.00, are assessed to plaintiff-appellee, the City of Baker School Board.

**MAY 12, 2025 ORDER VACATED; APRIL 28, 2025 JUDGMENT REVERSED; WRIT DENIED AS MOOT.**

---

[10] As we have reversed the judgment before us on appeal, we pretermit consideration of the DOE's assignment of error concerning the nonjoinder of BESE.

[11] Given our reversal of the issuance of the preliminary injunction on appeal, the DOE's application for supervisory review is denied as moot.